# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **14-03138-jw**

## ORDER ON MOTION FOR ATTORNEYS' FEES & COSTS

The relief set forth on the following pages, for a total of 11 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/12/2015**



*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 01/13/2015

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 14-03138-JW |
| | Chapter 13 |
| Linda Jane Ford, | **ORDER ON AWARD OF ATTORNEYS' FEES** |
| Debtor(s). | |

This matter is before the Court on Debtor's request for an award of attorneys' fees and costs to be paid by Midwest First Financial Limited Partnership IV ("Midwest"), pursuant to 11 U.S.C. § 105(a) in connection with the Court's prior order entered on October 29, 2014 denying Midwest's Motion for Relief from Automatic Stay ("Prior Order"). In the Prior Order, the Court reserved the issue of attorneys' fees for determination following a hearing. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

1. Debtor's case was filed on May 30, 2014. Along with her petition, Debtor filed her schedules, statements, motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3), and Chapter 13 plan. Debtor's motion to extend the stay and Chapter 13 plan were both properly served upon Midwest and included notice of the relevant deadlines for objections. The deadline for objections to Debtor's motion to extend the

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

1

automatic stay was June 13, 2014. Debtor's Chapter 13 plan stated June 27, 2014 as its deadline for objections to confirmation.

2.      Midwest did not file an objection to Debtor's motion to extend the stay or her proposed Chapter 13 plan. Debtor's motion to extend the stay was granted on June 18, 2014, conditioned upon any future dismissal being with prejudice as to future filings under Chapters 11, 12, and 13. Debtor's Chapter 13 plan, which provides for full payment of Midwest's allowed secured claim of $78,642.00 plus interest, was confirmed on July 3, 2014 ("Plan"), with Court records showing service of the confirmation order on Midwest. Midwest did not appeal the confirmation order.

3.      On July 2, 2014, one day prior to confirmation of Debtor's plan but five days after the deadline for objections to confirmation, Midwest filed its Motion for Relief from Automatic Stay ("Motion") requesting relief under 11 U.S.C. § 362(d)(1), (2), and/or (4). In its Motion, Midwest argued there was cause for relief from stay and additional *in rem* relief due to (1) lack of good faith in Debtor's filing of at least two of her four bankruptcy cases, including the instant case, over the span of fourteen years; (2) an absence of equity in Debtor's primary residence ("Property")[2] which Midwest claimed made the Property unnecessary for an effective reorganization; and (3) evidence that Debtor engaged in a scheme designed to delay collection of a debt by Midwest.

---

[2] On May 27, 1999, Debtor entered into a promissory note ("Note") with Saxon Mortgage, Incorporated, Midwest's predecessor in interest, to purchase real property located at 167 Neland Court, Walterboro, South Carolina 29488 ("Property"). On the same day, Debtor executed a mortgage in favor of Saxon Mortgage, Incorporated as to the Property in the amount of $68,000.00 ("Mortgage"). The Mortgage contained an acceleration clause allowing the Note's holder to demand full payment upon an event of default. The Mortgage also included a rider outlining the time at which the remaining balance on the Note would become due and payable if not already satisfied by previous payments ("Balloon Payment"). The Balloon Payment was scheduled to become due on June 1, 2014; at the time debtor filed the instant case on May 30, 2014, the Note's remaining balance was approximately $77,102.00. The Court's Prior Order contains a detailed recitation of the facts surrounding the debt owed to Midwest, including precise figures for prior payments on the Note and Mortgage made in Debtor's previous Chapter 13 cases.

4. Midwest's Motion did not cite any post-petition conduct by Debtor as grounds for the relief requested and specifically referenced only two of Debtor's prior bankruptcy filings: (1) Debtor's third case, # 09–07940–JW, in which Debtor made payments for four years prior to dismissal, including payments to Midwest totaling $11,575.93 of its allowed claim of $15,293.78;[3] and (2) the instant case, in which Debtor was current on her payments under her confirmed Chapter 13 Plan at the time of the later hearings on the Motion and attorneys' fees issue.

5. Sometime after Midwest filed its Motion, counsel for Debtor contacted counsel for Midwest and made good faith attempts to dissuade Midwest from pursuing its Motion in light of applicable case law and considering the Court's July 3, 2014 confirmation of Debtor's Chapter 13 Plan under which Midwest's allowed claim is to be paid in full, with interest.[4]

6. On July 8, 2014, Debtor filed an objection to the Motion asserting that her instant case, as well as each of her previous three Chapter 13 cases, was filed in good faith and not as a part of any scheme to delay collection by Midwest and that the Property, as her primary residence, is necessary to an effective reorganization despite the absence of equity in the Property.

---

[3] Debtor's confirmed plan in her third case required payments to Midwest of $245.00 or more per month, without interest, to cure an arrearage on the Mortgage through November 2009, with regular payments to be paid directly by Debtor beginning in December 2009. Debtor's plan in the third case also required payments to: (1) the Trustee of $480.00 per month for two months, followed by payments of $525.00 per month for fifty-eight (58) months; (2) her attorney for fees of $3,000.00, $900.00 of which was paid by Debtor at the start of the case; and (3) Consumer Portfolio Services, the holder of an allowed secured claim relating to Debtor's vehicle, in the amount of $148.00 or more per month, plus 5.25% interest, until its claim was paid in full.

[4] Debtor's Plan provides for full payment of Midwest's allowed secured claim of $78,642.00, with monthly payments to Midwest through the Trustee of $1,463.00, plus 5.25% interest. Ultimately, Debtor's successful completion of the Plan will result in Midwest receiving over $85,000.00. Debtor's Plan also requires payments to: (1) the Trustee of $1,665.00 per month for sixty (60) months, from which Midwest's will receive its payment under the Plan; and (2) her attorney for fees of $3,500.00, $1,500.00 of which was paid by Debtor at the start of the case.

3

7. On August 20, 2014, a hearing was held on the Motion. At the conclusion of the hearing, counsel for Debtor moved for an award of attorney's fees and costs, as requested in Debtor's objection to the Motion. Debtor's counsel provided an affidavit representing approximately ten hours work spent responding to Midwest's Motion and preparing for the hearing. Counsel's affidavit reflecting a total of $2,250.00 in fees was admitted into evidence without objection ("First Affidavit").

8. Debtor's testimony at the August 20, 2014 hearing reflected, among other things, the following facts:

    a. Prior to the instant case, Debtor filed three bankruptcy cases and in each case, Midwest received payments as a secured creditor through a confirmed Chapter 13 plan;

    b. The improvement to Debtor's financial situation subsequent to her third case is attributable to a reduction in childcare and vehicle expenses and an increase in her monthly income through receipt of additional retirement income;

    c. Between the time of dismissal of her third case and the filing of the instant case, Debtor made attempts outside of bankruptcy to work out her indebtedness to Midwest, including seeking a mortgage modification;[5]

    d. Debtor filed the instant case to save the Property through a restructuring of her debt to Midwest that would involve manageable monthly payments rather than the single, lump sum Balloon Payment;

---

[5] Midwest did not dispute that Debtor made efforts to work out her indebtedness subsequent to the dismissal of Debtor's third case.

4

    e.    Debtor has no equity in the Property, which continues to serve as her primary residence;

    f.    There is no evidence of post-confirmation conduct by Debtor that would indicate a default on her obligations under her confirmed Chapter 13 Plan to Midwest, the Trustee, or any other interested party; and

    g.    In her previous cases and in the instant case, Debtor has continued to pay down the debt owed to Midwest in relation to the Property.

9.    Aside from verifying through cross-examination that Debtor had filed more than one case over the course of fourteen years and that the Property had been affected by each filing, Midwest offered no other evidence in support of its Motion.

10.    At the conclusion of the August 20, 2014 hearing, the Court requested that Debtor's counsel submit a proposed order denying Midwest's Motion. Upon submission of the requested proposed order, counsel for Debtor provided the Court with an additional affidavit dated August 27, 2014 which described another fifteen and one half (15.5) hours spent by the firm representing Debtor in attending the hearing on Midwest's Motion as well as researching, preparing, and reviewing the requested proposed order. The total fee for the additional hours combined with the ten hours described in the First Affidavit equals $5,987.50. Counsel's affidavit was considered by the Court while Midwest's Motion remained under advisement ("Second Affidavit").

11.    On October 29, 2014, the Court denied Midwest's Motion under 11 U.S.C. § 362(d)(1), (2), and (4) as well as any request by Midwest for attorney's fees and costs associated with its Motion, including any request under the Note and Mortgage. A

5

separate order was entered on October 30, 2014, setting a further hearing on Debtor's request for attorneys' fees and costs to allow counsel for both parties to explore settlement and present applicable authority for the grant or denial of such an award.

12. On November 7, 2014, Debtor and Midwest filed a joint statement of dispute and stipulation in preparation for the hearing on Debtor's request for an award of attorneys' fees and costs. At the hearing, Debtor's counsel submitted another affidavit, dated November 10, 2014, reflecting an additional sixteen (16) hours spent in reviewing the Prior Order, discussing settlement of the issue of attorneys' fees with opposing counsel, as well as researching, reviewing, and editing the joint statement of dispute.[6] The total fee for the forty-one and one half (41.5) hours spent on Debtor's case as a result of Midwest's Motion equals $10,187.50. The affidavit was admitted into evidence without objection ("Final Affidavit"). Furthermore, it was undisputed that counsel for Debtor attempted to dissuade Midwest from pursuing its Motion in light of existing case law in this District and also pursued settlement discussions on the issue of attorneys' fees. Midwest declined those efforts and pursued relief from stay.

## ARGUMENTS

Debtor argues that Midwest's Motion had no basis under the facts of Debtor's case and constituted an abuse of judicial process as to require Midwest to pay Debtor's attorneys' fees and costs totaling $10,187.50, as reflected in the First, Second, and Final Affidavit (collectively, "Fee Affidavits"). Debtor relies upon the Court's authority under 11 U.S.C. § 105(a)[7] to issue such an award. Debtor contends Midwest's Motion arguments should have been raised through objections to Debtor's motion to extend the

---

[6] Unlike the First Affidavit, the previously discussed Second Affidavit and the November 10, 2014 affidavit reflected work by an additional attorney.
[7] Further reference to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) shall be by section number only.

6

stay and/or to the confirmation of Debtor's Chapter 13 Plan rather than in a motion for relief from stay subsequent to the confirmation. It is Debtor's position that the binding effect of confirmation and the Court's findings of good faith in the filing of Debtor's current case upon granting Debtor's motion to extend the stay and later confirming Debtor's Chapter 13 Plan barred Midwest from advancing the arguments set forth in its Motion regarding Debtor's lack of good faith in filing the instant case.

In response, Midwest argues the Court's Prior Order made no express finding of bad faith or other misconduct by Midwest in filing and pursuing its Motion, thus absolving it of any allegations of abuse of the bankruptcy process. Absent bad faith, Midwest contends sanctions in the form of an award of attorneys' fees under § 105 are not appropriate. Additionally, Midwest argues without an applicable statute or contract allocating attorney's fees, the American Rule followed by federal courts should prohibit Debtor, as the prevailing litigant, from collecting attorneys' fees from Midwest, the losing party. Finally, Midwest contends that if the Court finds an award of attorneys' fees and costs to be appropriate, the $10,187.50 requested by Debtor, as reflected in the Fee Affidavits, is excessive and should be reduced.

## **CONCLUSIONS OF LAW**

A bankruptcy court's order confirming a proposed Chapter 13 plan is a final judgment, the enforceability of which ordinarily cannot be challenged absent an objecting party's timely appeal or an applicable exception to the confirmation order's finality. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70 (2010). A confirmed

Chapter 13 plan is binding on the parties and a claimant, such as Midwest,[8] that fails to object to confirmation is nonetheless bound to the treatment afforded to it under the plan. *Id.* at 267–70; *see also In re Davis*, C/A No. 10–02249–JW, 2010 WL 5173187, at *2 (Bankr. D.S.C. Oct. 12, 2010) (finding that creditor was "bound by *res judicata* and 11 U.S.C. § 1327 to accept its treatment under the confirmed Plan . . . since it failed to object to confirmation, despite having been provided notice of the Plan and confirmation hearing, and failed to appeal the confirmation order") (citing *Espinosa*, 559 U.S. 260). In the instant case, despite receiving notice of the deadline by which objections to Debtor's Chapter 13 plan were due, Midwest did not file a timely objection and therefore was bound by the terms of the Plan.

The confirmed Plan provides for Debtor to retain use and possession of her residence, the clear and evident reason for her filing of the bankruptcy case, and allowed her to pay the balance due Midwest over the term of the Plan. The Court's confirmation of the Plan not only indicates that a successful reorganization was found to be reasonably possible in a reasonable time, but also necessarily required the Court to determine Debtor's good faith in the filing of the case. The determination of good faith in the filing of the case necessarily precluded the more extreme accusation made by Midwest that the case was filed as part of an ongoing scheme to delay, hinder or defraud it.

The relief from stay requested by the Motion reflected an attempt by Midwest to alter its treatment under the Plan to which it otherwise did not object, despite having notice of the opportunity to do so. Furthermore, the Motion was never amended nor evidence presented to indicate any post-confirmation default by Debtor or any other event

---

[8] On September 18, 2014, Midwest filed proof of its secured claim in the amount of $78,642.00, citing the remaining balance on the Note and Mortgage as its basis for claim and thereby submitting itself to the jurisdiction of this Court with respect to that claim. *See, e.g.*, *Espinosa*, 559 U.S. at 275.

8

that would otherwise support the Motion. Rather, Midwest's Motion raised and required re-litigation of issues which were previously decided in the confirmation process. Its filing and continued prosecution of the Motion after the expiration of the opportunity to object and the resulting confirmation of the Plan was violative of the Court's confirmation order, threatened Debtor's ability to retain her residence, and required Debtor to incur attorney's fees and costs. The expense of those attorney's fees and costs if paid by Debtor would also threaten her reorganization by depleting resources otherwise necessary to fund payments due under the Plan. Under the circumstances of this case and after full consideration of the evidence and arguments presented by the parties, the Court finds that Midwest's conduct constituted a violation of the confirmation order, an abuse of process, bad-faith conduct, and burdened the administration of this Debtor's case by this Court.

The Court "'possesses the inherent power to regulate litigants' behavior and to sanction for bad-faith conduct' pursuant to § 105." *In re Kilgore*, 253 B.R. 179, 190 (Bankr. D.S.C. 2000) (quoting *McGahren v. 1st Citizens Bank & Trust Co. (In re Weiss)*, 111 F. 3d 1159, 1171) (4th Cir. 1997)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991). It is well-established that the "broad powers" vested in this Court by § 105 permit the sanctioning of a creditor where it is necessary to prevent abuse of the judicial process. *Id.*; *see, e.g.*, *In re Hann*, 711 F. 3d 235, 242–43 (1st Cir. 2013) (affirming bankruptcy appellate panel's sanctions against creditor as proper exercise of court's equitable powers under § 105(a)); *In re Weiss*, 111 F. 3d at 1171 ("A court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions . . . ."); *In re Ulmer*, 363 B.R. 777, 781–82 (Bankr. D.S.C. 2007); *In re Workman*, 392

B.R. 189, 194 (Bankr. D.S.C. 2007) (citing *In re Papp*, No. 01–01785–JW, slip op. (Bankr. D.S.C. June 21, 2004)); *In re Woody*, No. 97–04702–JW, slip op. (Bankr. D.S.C. Apr. 19, 2002); *In re Asbill*, No. 98–05819–JW, slip op. (Bankr. D.S.C. Feb. 1, 1999), *aff'd*, *GE Capital Mortgage v. Asbill (In re Asbill)*, No. 3:99–0773–19 (D.S.C. Feb. 23, 2000). The Court finds unpersuasive Midwest's position that bad faith or an abuse of the bankruptcy process cannot serve as the ground(s) for sanctioning Midwest under § 105 in light of the absence of any such express findings by the Court in its Prior Order. To the contrary, the Prior Order expressly reserved ruling on the issue of sanctions, thereby alleviating the need to discuss therein any evidence of bad faith or abuse of process.

## CONCLUSION

Based on the foregoing, an award of attorneys' fees and costs to Debtor to be paid by Midwest in the amount $8,500.00[9] is appropriate under the broad powers vested in this Court by § 105 and pursuant to its inherent authority to regulate conduct before it.[10] Therefore, Midwest is hereby ordered to pay to Debtor within ten (10) days of the entry of this Order a sum of $8,500.00 to be applied to the attorneys' fees and costs incurred in challenging the Motion.

**AND IT IS SO ORDERED.**

---

[9] This amount is set, upon the Court's consideration of all of the circumstances in this case, as the minimum amount necessary to deter further abuse and to reimburse Debtor for the reasonable fees and costs incurred in this unsubstantiated action.

[10] In light of the Court's ruling that § 105 is the appropriate authority through which to sanction Midwest, the Court need not discuss but herein reserves consideration of whether sanctions might also be appropriate under 28 U.S.C. § 1927 or Fed. R. Civ. P. 11.